Hello, everyone. Thank you for gathering remotely today. This is Judge Menasche. I'm joined on the phone by Judge Calabresi and Judge Kodal, who's sitting by designation. We have five cases on the calendar today, four to be argued and one on submission. The case we're taking on submission is 2586 and 1922, Mazarigos v. Garland. And so we'll proceed to the first argued case, which is number 201650, Litman v. Rodenbach, for the appellant Mr. Carlin. Judge Calabresi Shall I proceed, Your Honor? Judge Menasche Yes, go ahead. Judge Calabresi I might say, Your Honor, I'm glad to see you, though I thought Judge Parker was on this panel. But no matter. Judge Menasche This is the panel. Judge Calabresi No, I know. But when I looked up on the panel, it doesn't matter. Judge Menasche I think there are two panels today. So he might be on the panel. Judge Calabresi It doesn't matter. I bargained before. Judge Menasche Go ahead. Judge Calabresi So may I please report? I didn't actually request oral argument in this case for two reasons. One is that I think the plaintiff appellant's briefs are very clear as to her position on the appeal. And second of all, I was afraid that asking for oral argument would occasion yet more delay in a case which has been very protracted. Now, I know that Your Honors are overworked. I will only suggest that I hope that it will not take many, many months for a decision on the appeal, because the case has been pending for a long time. I only want to make a couple of points. Of course, I'll be happy to answer questions, and I have reserved time for rebuttal. So the appellant's position is that this motion to dismiss, which we think was unfounded for the reasons set forth in the brief, this was filed to avoid rulings on two very important legal issues. One involves the duties of a trustee, and the other involves the duties of a lawyer. Now, assume the following facts. You are a lawyer representing an elderly client who with his powers failing has turned over to you all of his assets in a trust. You happen to believe that the client, as a rather foolish old man, was too generous to his wife over the years. So you decide to work steadily to court your client's instructions on how you should treat his wife. I just want to focus on one of those, which is a central issue in this case. The client instructed that if he ever became mentally impaired in the judgment of two doctors who he named who had been treating him, you should start paying his wife an annuity. Counsel, very well, but there was a settlement, there was an agreement, and there was really no reason whatever why your client didn't know or couldn't know about this before. You make all sorts of statements that she couldn't, but there was an antinuptial agreement that spoke of disability. Isn't this, under New York law, standard race judicata? Absolutely not, Your Honor. You're not making a distinction, which the other side did not make to Judge Hurley. Yes, the plaintiff was well aware that her husband had made a promise to her. He was not seeking to enforce that promise, because he had promised her she should stay in the house after he died, and that was the promise that was important to her. But she did not know, because the defendants here did not disclose to her that they, the trustees, had made a promise to him that if he became mentally impaired, they would pay her money. They never disclosed that to him? They never provided... Wasn't that... I'm sorry. The way you discovered that evidence was just by going and the documents later, and I looked at them. They never sent the documents to her, and at the time we settled this case, the first case, we had no idea that they had made this promise. In fact, they emailed... Wasn't the first case based in part on a provision of the living trust, and isn't your argument in the case before us now also based on simply another provision of the living trust? Yes, but the provision of the living trust involved in the other case was one we knew about, because they admitted it. This was one we didn't know about it, because they denied it. They said that in writing... You relied on a provision of the living trust in the first complaint... I'm not sure which... Your Honor, I'm not sure which provision of the living trust. I don't recall that. It was the provision of the living trust that required the payment of the annuity payment after death. Well, that's right, because that was disclosed to us, and we knew about it, but this was not disclosed to us. It was explicitly denied in emails by the defendant. Wasn't all of this implicit and very clear from the antinupial agreement? Yes. Just from one thing or the other, the antinupial agreement, you could have gone and seen what was going on. You could have asked, and you didn't do it before the first settlement. My client made a decision not to enforce the antinupial agreement, because that was not her priority, but she did not know that these defendants had taken upon themselves a separate obligation to enforce the antinupial agreement. Your client could decide what to do and what not to do, of course, but the law of New York is that if you have claims and you don't bring them, and they are related claims to the claims you bring, you don't bring them later. So, of course, your client could decide to do what she wanted or look into the antinupial agreement or not, but the fact is that her rights were all there at one time. They were not disclosed to her, and the law is you have to bring claims that you are aware of and that have not been hidden from you. That's fundamental here. Can I just clarify exactly what we're talking about? So, you were aware of the living trust and you were aware of the antinupial agreement, but what you say you were not aware of was the 2009 amendment that made the trustees of the living trust that obligated them to comply with section 2.3 of the antinupial agreement. Is that right? We knew there had been an amendment, but we didn't know that that had been added to that. So, when you relied on the other provision of the living trust, you had some version, you had an unamended version of the living trust. Is that what you relied on in the first? That's not exactly right. The claims were based upon email correspondence with the lawyers of the other side in which they had disclosed that other obligation, and with their disclosure that we relied on, they did not disclose this obligation. That case was not based upon studying. So, because you knew that there was the underlying document of the living trust, what prevented you in the first suit from obtaining a copy of the relevant? What I had been hired to do was to keep her in the house. I looked at these agreements and there was nothing in the agreements about keeping her in the house, and that was the only issue between us. This other issue never came up because it was not disclosed, and in fact, hidden from her because they didn't give her a copy. But there was a claim for breach of fiduciary duties about not paying out the death benefit, right? That wasn't the position. Everybody agreed. Everybody agreed. It was in written correspondence with the lawyers that when Paul Kushner died, she was to get $150,000 a year. That was understood. It was confirmed in writing. That's what we based the claim on, not on a study of a lengthy trust. Can I ask you a slightly different question, which is, you know, you opened this by saying that in this suit, the second suit, you're bringing claims related to Rodenbach's duties as a trustee and his duties as a lawyer. So now, I understand, you know, when we talk about privity, whether somebody had their day in court, you know, Barber is also a trustee, and so maybe there's an argument. I know you disagree with this argument, but there seems to be an argument that because she's also a trustee, she's in privity with Rodenbach, and maybe he was represented. But I'm kind of interested in your reaction to whether the duties as a lawyer are different. So Barber is not a lawyer. So might there be a stronger argument that there's no privity when you're as a lawyer, when in the first suit, the only party who appeared was another lawyer? I think so, Your Honor, but they have conceded in their papers that there was no privity. They sent us an email saying the trust was not a party to the settlement. They said that in writing. Only now they're changing their mind after the fact. So yes, they have separate obligations, and Rodenbach has greater obligations, but she has an obligation as a trustee which she did not disclose to us and which she dishonored and which was not known to us at the time the first action was settled. Okay, well, you've reserved time for rebuttal, so we'll hear from you again, but unless either of my colleagues have further questions. No, thank you. No. Okay, we'll hear from you again on rebuttal. Let's turn to the accolades. Mr. Kalin. Okay. Yes. May it please the court, my name is Michael Kalin. I represent the defendant appellees Edward Rodenbach and Cummings and Lockwood, LLC. Elizabeth Eusinger and Tonya Cohen-Dykeman represents the defendant appellee Jane Barber. We have agreed between the time equally. However, we've also agreed that if the court has additional questions for me, when my time expires, I should continue to answer the court's questions, and Ms. Eusinger will take up the remaining time of our 10 minutes. To go right to the point that the court was just asking the appellant's counsel about. Okay. So there is no misunderstanding about this whatsoever. Appellant's counsel had copies of the living trust and amendments to the living trust and the anti-nuptial agreement at the time he filed the first action. And we know this because he specifically referenced them. In paragraph eight of his complaint, he referred to the amendments through December 8th, 2009. In his breach of contract claim, he refers to the anti-nuptial agreement, specific provisions in the anti-nuptial agreement that provide for paying annuity on death. And in his breach of fiduciary duty claim in the first action, he refers to the obligation of the trustees of the trust to fund that annuity. Now in the second action, he's literally referring to the provisions in the living trust and the anti-nuptial agreement which precede the provisions he cited in the first case. Well, what about the argument that opposing counsel just made that in the first action, he was hired to keep her in the house in Southampton and it really wasn't about enforcement of living trust and that is a different transaction. And that's contradicted by the record itself. The reason the first action was brought was twofold. One was to prevent the trustees from evicting Ms. Lipman from the house, but the other was to compel trustees to begin making the payments under the death annuity, to begin making the annuity payments that she claimed she was due on death. The reason they weren't being paid and the reason the action was brought was because the trustees claimed that they didn't have the funds to fund the annuity payments on death until the house... Okay, I see that. So you're saying there were claims under the living trust. Can I ask you, since you represent Mr. Rodenbach, the question that I just asked opposing counsel, which is... I can understand since in the first action, there were claims brought against Barbara as a trustee that Mr. Rodenbach as a co-trustee might have been in privity with her because the same claims could have been brought against him or they would be very similar. But in this action, we have claims against him as a lawyer for legal malpractice and for violation of the New York judiciary law. Now, those claims could have been brought against Barbara because she's not a lawyer and doesn't have duties as a lawyer. So isn't it sort of odd to say that Rodenbach was in privity with Barbara, that it was tantamount to him having his day in court when those claims just could not possibly have been brought in the first action? No, because that gets to the theory of recovery, not the recovery that the plaintiff was seeking in the case. And the fact is that both the legal malpractice claims that they're bringing in the second action arise out of the same facts that were present in the first action. Basically, the only difference between the first action and the second action was the first action was that they said there was a duty. I agree with that. Yes, I understand that it arrives out of the same facts and it's the same series of transactions. But of course, Barbara and Rodenbach are not similarly situated with respect to the duties they owe because Barbara isn't capable of violating the New York judiciary law because she's not an attorney. And it just sort of seems odd to me to say that Rodenbach effectively had his day in court through Barbara when those claims could not possibly have been brought against Barbara. So why wouldn't it matter that their duties were different? Well, that actually brings up an interesting issue, which I picked up yesterday when I was talking about the privity issue. It's the privity of the person against whom the collateral estoppel is asserted. That's what your court's cases say in the Second Circuit. But this is res judicata. This is res judicata, not collateral estoppel. I'm sorry. I meant to say res judicata. But when you look at the cases, they specifically say privity. It's the privity between the parties against whom the res judicata is asserted. And the reason makes perfect sense because if you're going to say that the plaintiff in this case is precluded from bringing these claims, you want to be assured that the plaintiff had every motivation and every responsibility to bring these claims in the first action. I'm sorry. Glenn, you're saying that we don't even need to find that Barbara was in privity with Rodenbach? Just the fact that there was a lawsuit where Lippman was the plaintiff means she can't bring any more lawsuits and it doesn't even matter who the counterparties are and their split hairs here. I'm looking to be fair to the plaintiff. What I'm saying is that the plaintiff had every motivation and every responsibility in the first action to bring all the claims that she had against Barbara and Rodenbach. And I am saying there is privity between Barbara and Rodenbach because she literally was making claims against Barbara as a trustee of the trust. And she was alleging that there were fiduciary duties as a trustee of the trust. Right. So that's exactly my point. That's exactly my point. So she's making claims against Barbara as a trustee of the trust. And Rodenbach's also a trustee. So you could say, well, Rodenbach was in privity with Barbara and his interests were effectively represented because he was in the same position. But she was not bringing claims against Barbara as an attorney. And I guess I was asking what is the difference? That's exactly my point, Your Honor. What I'm saying is because she was making claims against Barbara that included Rodenbach, the plaintiff had the obligation not just to bring all the claims that she had against Barbara, but also all the claims that she had against Rodenbach in the first action. And if she's alleging that Rodenbach had a duty to disclose, whether it's based upon the fact that he's an not just against Barbara, but against Rodenbach. And once she had to bring the suit against Rodenbach, she had to bring all the possible suits against Rodenbach as well. Is that your claim, what you're arguing? I'm not saying she had to bring the claim against Rodenbach. I'm saying because of the nature of the claims that she brought against Barbara for res judicata purposes, because of the nature of the claims that she brought against Barbara, she also had for res judicata purposes, it would include all the claims that she had against Rodenbach. Isn't your argument that she had to bring all of the claims against Barbara arising out of the same transaction or series of transactions, and Rodenbach had a sufficient connection to Barbara and to the first suit that his interests were represented. Therefore, she had to bring all of the claims she had in the first action, whether they were- So your position would amount to a rule that as long as there is privity for some purposes, that is that they are both co-trustees, res judicata would bar any claim that she could have brought in the first action against anyone who was in privity with the main party in that action, even if in a different capacity or based on different duties. I think that's your position. That's correct. What I'm essentially saying is- I don't think you need to go quite that far. I think you need to say that they needed to bring any other claims against the other party that were related to this, that they may not have been in the same capacity, but claims that were related to this. It doesn't mean that they had to bring any claims for a highway accident against Rodenbach. You're not saying that, but you're saying that they had to bring any claims related to this set of issues in the same in that pursuit. Is that what you're saying? Yes. Thank you, your honor. You're being very clear on that for me, and I should have been, I meant to simply go back to the standard for res judicata and say that, number one, she had to bring all the claims that arise out of the same operative facts, and she had to bring all the claims that she had in the same operative facts against the defendants who were in privity with each other. I'm certainly saying that Rodenbach and Barber were in privity with each other, but the claims that arise out of these facts. Right, but I mean, you can imagine Rodenbach acting in a different capacity, like let's say he had actually made repairs on the Southampton House or something, and so in addition to suing Barber as a trustee, so she sues Barber as a trustee in the first action, and in the second action sues Rodenbach because he had defectively repaired the house and created a kind of dangerous condition. Even though Barber had not done that because it was related to the first action, would you say it would be barred? I would say it wouldn't be barred because it doesn't arise out of the same operative facts. You're saying that that's not the same operative fact, so even though it's all about the maintenance of the house or they're taking care of the house, it would be sufficiently unrelated because it's a different kind of thing he's doing because he's acting as a contractor or repairman or something. And so I guess, but you're saying that acting as an attorney would not be different because the attorney is doing similar things to a trustee, is that the difference? It's because the claim against Rodenbach is just a different theory for the same recovery. She's trying to recover for the same injury, but it's just a different theory. The injury... Okay, so even if a trustee is denying her benefits as a trustee, that would still bar claims for a lawyer denying her benefits as a lawyer because even though they're acting in the same injury to her. To apply it to the facts of this case to try to make it easier, the injury she's complaining of is that Rodenbach and Barber didn't start paying the disability benefits when Mr. Pushner became disabled some 10 years before the first action was commenced. And so what she wants is the object of the action is to get the disability benefits. You know, I get that point. She wants the payoff from the trust. So we've taken you over time and I know that Ms. Usinger was going to speak and we've gone over time, but why don't we hear from her for just a couple minutes if she has something to add and then we'll turn back to Mr. Carlin. Thank you. May it please the court, Elizabeth Usinger, on behalf of the SLA, Jane Barber. I do believe that a lot of this has been covered by Mr. Carlin, but so I won't take up too much of the court's time. We're asking the court to affirm the decision of Judge Hurley. It is quite clear that this is a textbook case of race judicata. We have claim preclusion here. It is well settled that New York state and federal courts do use the transactional approach, which the court was just discussing with Mr. Carlin, in that the later claims are barred if they arrive at a factual grouping. And that's the case, even if the claims asserted in the second action are based on different legal theories or seek additional relief. All of the elements of race judicata are met here. The prior action was adjudicated on the merits. It was settled on the record, dismissed with prejudice, and that does have a preclusive effect for race judicata as to issues raised in that action and, of course, the issues that could have been raised, but were not. We've discussed the privity issue. I think it's clear that both co-trustees had aligned interests in the outcome of that action, as well as this action. Well, can I just ask you about the question that I had asked Mr. Carlin? So, I mean, you represent Ms. Barber. I mean, could Ms. Barber have defended against... Did she have aligned interests for the purposes of the allegations of legal malpractice or violating the New York judiciary law? As a non-lawyer, no. However, those claims for violation of the don't involve violation of the judiciary law. It's just another set. It's just another theory, legal theory, based on the same set of facts, and those are precluded by race judicata. Okay. Thank you. Okay. If my colleagues don't have further questions, thank you, Ms. Eusinger. We'll turn back to Mr. Carlin on rebuttal. Thank you, Your Honor. I want to make a very simple point. Since you can't see me, you couldn't see me scratching my head when I was asked, you know, were you suing under the living trust in the first action? We were not. We were suing under what's called the CRAT. The CRAT is a separate trust, and it is the one that provides for the death benefit, and all we were suing for in the first action was failure to pay the death benefit under the CRAT. Now, in their papers, I set this out in detail in my brief. In their papers, the other side told Judge Hurley that we were suing under the CRAT in this case, and we were not. They were saying in this case the CRAT should never have been funded because the disability trust would have been funded. So you kept on asking questions, aren't they trustees of the trust? There are two different trusts here. They're trustees of the CRAT, but we're not suing under the CRAT here. We're suing under the living trust and the obligation we didn't know about to pay a disability benefit, not a death benefit. You did specifically refer to provisions of the living trust in the first action. Article 2, section C4 of the trust provides, and then you explained Article 2, section C4. Hold on, hold on. What you're doing in this action is suing under another provision of the living trust. If you had further claims under the living trust, the argument goes you should have brought them in the first action. All I can tell you is that that's a fundamental misapprehension caused by the way the defendants briefed their motion to dismiss, which I asked you to look at. Mr. Kalin just told you we're suing for the same injury here. He just said that to you. We are not. The injury sued for in the first case under the trust, meaning the CRAT, was that when Mr. Fishman died, they didn't start paying her a death annuity. What we're suing for here is that when he became disabled many years before, they didn't pay the disability annuity. That's not the same injury. They're completely separate. The disability annuity was not a subject of the first action. So therefore, that section of the living trust was not referred to because his disability was irrelevant to the first action. It is central. But they are related, but the argument the other way is that they are sufficiently related, so that in New York, you have to bring them both at the same time. I understand the argument, Your Honor, but they're not sufficiently related. They're completely different in their nature. If they had paid the disability annuity when they should have, the CRAT would never have been funded. It wouldn't exist. So they're not related. They are totally separate. And the court doesn't seem to fasten on the fact that these trustees deliberately hid from the plaintiffs that they had assumed an obligation to enforce the annuptial agreement. She always thought that the annuptial agreement was between her and her husband. She didn't know because they didn't tell her. So can I ask you, since the Pershing Council had said that you had a copy of the living trust at the time of the first suit, is there evidence in the record that shows that they took actions to hide it from you or to hide the 2009 amendment from you? What is the evidence that establishes that? There's nothing in the record as to when I received copies of those trusts. It's true that at one point, they sent me with no explanation. A thick, thick pack of all of these trusts. But I looked at the agreements and they had nothing to do with her staying in the house, which is what I've been hired to do. I wasn't hired as a trusted estates lawyer. These trusts that they sent me without explanation, and I now realize they sent them just so they could make this argument, but they had never sent them to her. They had never disclosed to her as their trustees or lawyer that they had assumed these obligations. She didn't know they had assumed the obligation, but they sent me a pack of agreements. I mean, that's a very odd way of hiding something from somebody is sending them a copy and expecting them to go through the document. I don't agree, Your Honor, because there's multiple email exchanges with counsel, which are quoted in the complaint and which are true, in which they said, we have no obligations under the antitrust agreement, which contradicts the language in the living trust. But that's not what I was doing. I was trying to keep her in the house. And they never told her that they had the, yes, years after the fact, 10 years after he became disabled, they sent a pile of papers to her lawyer so they can make this argument. But that was not what was at issue in the case. What was at issue in the first case was the crack and the death penalty. So there's no reason. Okay. I think we have that argument, Mr. Carling. Okay. Thank you very much. The case is submitted. We're going to proceed.